***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner in a pretrial agreement as: *Page 2 
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee.
3. The carrier liable on the risk is correctly named.
4. The employee's average weekly wage will be determined from an Industrial Commission Form 22 wage chart to be provided by the defendant with supporting wage information.
5. The employee sustained an injury on or about September 9, 2005, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of employment and is compensable.
 ***********
Based upon all the competent evidence of record, the undersigned makes the following additions:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Stephenson, plaintiff was 37 years old. Plaintiff went through the tenth grade in high school. Plaintiff has a vocational history of working in manufacturing plants and food service agencies, department stores, and distribution centers.
2. Plaintiff was initially placed at the defendant-employer through a temporary agency. She was hired as an employee by the defendant-employer after her probationary period with the temporary agency. Plaintiff was originally hired as a "fruit preparer". Plaintiff's job duties consisted of washing and cleaning fruit, cutting/dicing fruit and setting it up on the *Page 3 
display. Plaintiff would also help out other sections in the kitchen with various other duties. Plaintiff was moved from "fruit preparer" to "salad bar".
3. Plaintiff was moved over to "main dish" to cover for a co-worker who was out due to surgery. Plaintiff's position had her preparing meals in the kitchen.
4. On September 9, 2005, Plaintiff was working in the kitchen when she slipped and fell injuring her spine and left elbow. The claim was accepted by the workers' compensation carrier. Plaintiff was authorized to treat with US Healthworks for her injuries.
5. Plaintiff was diagnosed with a contusion/sprain and released to work with restrictions of no lifting more than 15 pounds. No light duty work was available. The defendant-carrier commenced temporary total disability benefits on a Form 60. Benefits commenced on September 10, 2005.
6. Plaintiff was authorized to treat with Dr. Zane Walsh with Highland Health in October 2005. Plaintiff was first examined by Dr. Walsh on October 26, 2005. Dr. Walsh diagnosed Plaintiff with left SI joint dysfunction. He recommended SI joint injections and physical therapy. Dr. Walsh issued restrictions of no frequent bending or stooping and no lifting greater than 20 pounds.
7. Plaintiff agreed to undergo the SI joint injections. Plaintiff had difficulty getting the physical therapy scheduled. Dr. Walsh wrote Plaintiff out of work for the period that she would be attending therapy (nine weeks).
8. Dr. Walsh was presented with a job description for a cashier position for approval. Dr. Walsh commented in his medical note of January 31, 20006 that he felt Plaintiff should be able to do this job. This job description presented to Dr. Walsh was titled "Shinita Jones Temporary Job Description" and dated January 24, 2006. *Page 4 
9. Dr. Walsh released Ms. Jones at maximum medical improvement on February 28, 2006. Dr. Walsh issued Plaintiff a two percent permanent partial disability rating to her leg based on American Medical Association guidelines. Dr. Walsh stated in his medical note that he "completed his treatment." Dr. Walsh stated that Plaintiff had restrictions of no prolonged standing or walking, no frequent bending/stooping, no lifting greater than 10 pounds, 20 pounds occasionally.
10. Plaintiff attempted to return to work in March 2007. Plaintiff worked approximately one week before she went back out of work because she could not perform the job duties. Plaintiff was to return to work in the cashier position but due to her medical condition she was sent home after reporting to work. Plaintiff's temporary total disability benefits continued during this attempt to return to work.
11. Plaintiff returned to Dr. Walsh on March 21, 2006. Dr. Walsh recommended that an EMG be performed. Dr. Walsh also wrote Plaintiff out of work until her second opinion.
12. Plaintiff was examined by Dr. Sanitate with Garner Orthopaedics on April 6, 2006. Dr. Sanitate recommended left gluteal trigger point injections or possibly a Botox injection. Dr. Sanitate recommended frequent position changes, avoiding repetitive flexion/extension of the lumbar spine and no lifting greater than 20 pounds.
13. Plaintiff returned to Dr. Walsh on May 4, 2006. Dr. Walsh discussed the injections with Plaintiff. He concurred with the restrictions set out by Dr. Sanitate.
14. Plaintiff's temporary total disability benefits were suspended via a Form 24 on March 19, 2006. *Page 5 
15. Plaintiff returned to Dr. Walsh on July 6, 2006. Plaintiff declined the injection therapy regime. Dr. Walsh had no further recommendations for her. Dr. Walsh reported that Plaintiff had chronic pain syndrome.
16. Plaintiff received a letter from the defendant-employer stating that they had a cashier position available for her beginning in August 2006. Plaintiff returned to Dr. Walsh on August 17, 2006 to discuss the job description with him as she did not believe it accurately reflected all of the job duties of a cashier. Specifically, cashiers were also required to assist with other kitchen duties such as stocking milk and juice, tasks which exceeded her restrictions.
17. Plaintiff attempted to return to work in the cashier position. She was in pain on the date of her return to work. She discussed this with Ms. Overdun. Ms. Overdun had her "monitor" the cafeteria. Plaintiff was required to walk, stand, bend, stoop and lift. Plaintiff had to empty the trash bags which required her to lift them out of the receptacles and tie them off. The trash bags exceeded the amount that she was supposed to lift. Plaintiff received assistance in lifting from Ms. Shawna Legg. Due to increasing pain, plaintiff was not able to complete her shift. Plaintiff spoke with Ms. Overdun and left work early. This was confirmed by Ms. Overdun. Plaintiff did not work longer than two and a half hours before having to leave due to pain. Plaintiff normally worked four and a half hours.
18. Cashiers would be required to do other jobs when not operating the cash register. Cash register operators would assist with washing dishes, restocking the lines, sweeping or mopping the floors, and restocking the juice and milk boxes.
19. Ms. Anita King worked as a cashier for Cumberland County Schools approximately seven years. The cashier position required her to stand, walk, reach, bend, and lift greater than ten pounds. She was assigned other duties when she was not operating the register. *Page 6 
She had swept the floor, washed pots and pans, emptied trash or whatever else needed to be done.
20. Ms. Overdun had a lot of cashiers at her school. All cafeteria workers were trained to operate the cash register. The cashier position at Douglas Byrd Middle School involved performing a variety of duties in addition to operating the cash register when students were coming through the line. Ms. King would dip fruit or perform other tasks that needed to be done when she wasn't operating the cash register and this was expected of all of her register operators. Ms. Overdun understood the requirement of safe preparation and handling of foods as listed on the job description to mean that the cash register operator can be expected to clean and sanitize equipment and facilities, scrubbing floors, carrying out trash, cleaning cooking utensils, preparing food, moving food, and working on the serving line. Ms. Overdun did not have one person specifically assigned where all they do is operate the cash register.
21. Ms. Angela McNair confirmed Plaintiff's testimony that the cashier's position required more tasks than just operating the cash register. Everyone was expected to help out with whatever needed to be done.
22. Ms. Tina Locklear is an assistant manager with Cumberland County Schools. The cashier is responsible for restocking the front end. This also required the restocking of the milk containers.
23. Despite the knowledge of plaintiff leaving work early, the defendant-carrier filed a Form 28T stating that Plaintiff returned to work in a trial capacity. Ms. Kathy Overdun and Mr. Henry Smith were both aware that Plaintiff did not complete her scheduled shift. Mr. Smith spoke to Key Risk about Plaintiff not being able to complete her shift based on the information *Page 7 
provided to him by Ms. Overdun. Ms. Overdun did not expect Plaintiff to return to work. Plaintiff did not return to work and requested to be seen by Dr. Walsh.
24. Dr. Walsh examined Plaintiff on August 31, 2006. Dr. Walsh stated that Plaintiff could work within the restrictions that he previously issued.
25. Plaintiff did not return to work for the defendant-employer. Plaintiff's temporary total disability benefits were terminated with the filing of the Form 28T.
26. Plaintiff requested a second opinion with a physician of her choice. This was denied by the workers' compensation carrier.
27. Plaintiff's average weekly wage on September 9, 2005 per the Industrial Commission Form 22 was $183.26 yielding a compensation rate of $122.18 per week.
 ***********
The foregoing stipulations and findings of fact engender the following additional:
 CONCLUSIONS OF LAW:
1. On September 9, 2005, Plaintiff sustained an admittedly compensable injury by accident which resulted in an injury to her spine and left elbow. N.C. Gen. Stat. § 97-27(6).
2. Because the jobs offered to her were not suitable for Plaintiff's physical capacity, plaintiff has not unjustifiably refused suitable employment. N.C. Gen. Stat. § 97-32.
3. Plaintiff is entitled to temporary total disability benefits from August 26, 2006 until August 31, 2006 when Dr. Walsh released Plaintiff to return to work. N.C. Gen. Stat. § 97-29.
4. Plaintiff did not present sufficient evidence to meet her burden of proving that she was still disabled after August 31, 2006. Plaintiff, even though she was capable of some work, *Page 8 
did not show that she had made a reasonable effort to obtain work, but had been unsuccessful. Russell v. Lowes, 108 N.C. App. 762,425 S.E.2d 454 (1993).
 ***********
Based on the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff is entitled to temporary total disability benefits from August 26, 2006 until August 31, 2006.
2. Plaintiff's claim for further benefits, under the law must be and hereby is DENIED.
3. Defendants shall pay the costs.
This the ___ day of January 2009.
 S/______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/______________________ LAURA K. MAVRETIC COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1